UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

JAMES H. HAYES,

Petitioner,

v.

JERRY HOWELL, et al.,

Respondents.

Case No. 2:20-cv-00945-GMN-BNW

ORDER

James H. Hayes' pro se 28 U.S.C. § 2254 habeas corpus petition is before the court for final adjudication on the merits (ECF Nos. 5, 6). As discussed below, the petition is denied.

**I.      Background & Procedural History**

As set forth in this court's order granting respondents' motion to dismiss in part, this case arises out of incidences in early 2016 in Harrah's Hotel & Casino in Las Vegas, Nevada, when a high number of guests reported items stolen from their rooms (*see* ECF No. 12, p. 2). Harrah's set up a staged hotel room, with $350 in a wallet and other property including an iPad and left the door slightly ajar. They placed cameras inside and surveilled from the room next door. In the early morning hours, Hayes checked the door to the room and entered. He took the money from the wallet, and hotel security apprehended him when he exited the room.

In January 2017, a jury found Hayes guilty of burglary (exhibit 39).[1] The state district court sentenced him to a term of 21 to 72 months. Exh. 48. Judgment of conviction was entered on March 13, 2017. *Id.*

The Nevada Court of Appeals affirmed Hayes' conviction in 2018. Exh. 126. The Nevada Court of Appeals affirmed the denial of his state postconviction habeas corpus petition in 2020. Exh. 207.

Hayes dispatched his federal habeas corpus petition for filing in May 2020 (ECF No. 6).  Respondents have now answered the remaining seven grounds for relief (ECF No. 49). Hayes filed a traverse and an addendum (ECF Nos. 54, 58). The court has considered all briefing.

## II.    LEGAL STANDARD -Antiterrorism and Effective Death Penalty Act (AEDPA)

28 U.S.C. § 2254(d), a provision of the Antiterrorism and Effective Death Penalty Act (AEDPA), provides the legal standards for this court's consideration of the petition in this case:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)    resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)    resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S.

---

[1] Exhibits referenced in this order are exhibits to respondents' motion to dismiss, ECF No. 12, and are found at ECF Nos. 13-26.

685, 693-694 (2002). This court's ability to grant a writ is limited to cases where "there is no possibility fair-minded jurists could disagree that the state court's decision conflicts with [Supreme Court] precedents." *Harrington v. Richter*, 562 U.S. 86, 102 (2011). The Supreme Court has emphasized "that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003)); *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard as "a difficult to meet and highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt") (internal quotation marks and citations omitted).

A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer*, 538 U.S. at 73 (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000), and citing *Bell*, 535 U.S. at 694.

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer*, 538 U.S. at 74 (quoting *Williams*, 529 U.S. at 413). The "unreasonable application" clause requires the state court decision to be more than incorrect or erroneous; the state court's application of clearly established law must be objectively unreasonable. *Id.* (quoting *Williams*, 529 U.S. at 409).

To the extent that the state court's factual findings are challenged, the "unreasonable determination of fact" clause of § 2254(d)(2) controls on federal habeas review. *E.g., Lambert v. Blodgett*, 393 F.3d 943, 972 (9th Cir.2004). This clause requires that the federal courts "must be particularly deferential" to state court factual

determinations. *Id*. The governing standard is not satisfied by a showing merely that the state court finding was "clearly erroneous." 393 F.3d at 973. Rather, AEDPA requires substantially more deference:

> .... [I]n concluding that a state-court finding is unsupported by substantial evidence in the state-court record, it is not enough that we would reverse in similar circumstances if this were an appeal from a district court decision. Rather, we must be convinced that an appellate panel, applying the normal standards of appellate review, could not reasonably conclude that the finding is supported by the record.

*Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir.2004); *see also Lambert*, 393 F.3d at 972.

Under § 2254(e)(1), state court factual findings are presumed to be correct unless rebutted by clear and convincing evidence. The petitioner bears the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Cullen*, 563 U.S. at 181.

### III.   Trial Testimony

Harrah's security investigator David Travis testified that, due to an unusually high number of thefts, on April 1-2, 2016, he and two other security officers staged property in a hotel room, including suitcases, clothing, toiletries, jewelry, an iPad, and a wallet with $350 in cash, and set up cameras. Exh. 37, pp. 202-252. They monitored the room from the room next door. The officers had photocopied the money. They left the door slightly ajar as if to look like a guest failed to close it properly. Just before 2 a.m. the officers observed a man going down the hallway; it appeared that he was checking doors. When he found that that door was open, he entered the room. The officers watched the man, via the cameras, take the cash out of the wallet and put it in his front left pants pocket. When the man exited the room, security officers were waiting outside to detain him. Travis identified Hayes in court as the man that they detained. When Las Vegas Metropolitan Police arrive, they searched Hayes. He told them that the money in his right pocket was his and that the money they were looking for was in his left pocket. The State played the surveillance video for the jury.

Richard Lazo, another security officer involved in the surveillance, testified similarly to Travis. Exh. 37, pp. 253-272.  He said that when Hayes started to leave the room, he and another officer exited the room next door and waited for Hayes. When Hayes came out, they advised him that he was being detained for burglary.

Hayes testified that on the night in question he went to the 17th floor at Harrah's to meet up with three women. Exh. 38, pp. 38-79. He solicited one of the women, Anna, for sex and arranged to meet her at her room, which she said was on the 9th floor. He left the 17th floor via the stairs and smoked marijuana in the stairwell on his way down. He said he found the room on the 9th floor slightly ajar, which was according to his plan with Anna. He said when he discovered that she was not in the room he rummaged through her belongings and took the cash that he found. The main thrust of his testimony was that he entered the room in order to solicit a prostitute and that after he was in the room and came across the cash, he decided to take it. Defense counsel elicited testimony from Hayes that he was convicted of felony attempt possession of a credit or debit card without cardholder's consent about six years earlier.

### IV.    Instant Petition

### Ground 1

Hayes asserts that the State violated *Brady v. Maryland* and his Fourteenth Amendment rights to due process and a fair trial when it failed to produce a surveillance tape in a timely manner (ECF No. 5, pp. 3-8).

The United States Supreme Court held in *Brady* that the suppression by the prosecution of evidence favorable to an accused violates due process where the evidence is material either to guilt or to punishment, whether or not the prosecution acted in bad faith. 373 U.S. 83, 87 (1963). In *Strickler v. Greene*, the Court set out the three elements of a *Brady* prosecutorial misconduct claim: "The evidence at issue must be favorable to the accused, either because it is exculpatory, or because it is impeaching; that evidence must have been suppressed by the State, either willfully or inadvertently; and prejudice must have ensued." 527 U.S. 263, 281–282 (1999).

1

2

The Nevada Court of Appeals rejected this claim:

. . . we first review de novo whether the State adequately disclosed information under *Brady*. *Mazzan v. Warden*, 116 Nev. 48, 66, 993 P.2d 25, 36 (2000). To prove a *Brady* violation, an accused must demonstrate "the evidence at issue is favorable to the accused; the evidence was withheld by the state, either intentionally or inadvertently; and prejudice ensued, i.e., the evidence was material." *Id*. at 67, 993 P.2d at 37. Evidence is material only "if there is a reasonable probability that result would have been different if the evidence had been disclosed." *Id*. at 66, 993 P.2d at 36.

Here, the record does not suggest the State withheld the evidence or contributed to the delay in producing that evidence. Rather, the record shows that Harrah's initially failed to provide the surveillance video, and once Harrah's did provide the video the State immediately notified Hayes. Nor does Hayes demonstrate the evidence was material in this case, where it did not show Hayes engaged in the actions underlying this crime, and where other evidence, including other surveillance video, did show those actions. Again, in light of the overwhelming evidence and Hayes' own testimony, Hayes fails to show prejudicial error. We therefore conclude Hayes fails to demonstrate a *Brady* violation here.

Exh. 126, pp. 4-5.

In his petition, Hayes acknowledges that the State had "recently" obtained the surveillance video when it provided the video to Hayes (ECF No. 5, p. 3). He argues that the trial court should have excluded the tape "rather than forcing him to go forward without having the opportunity to properly analyze the tape and determine how this new evidence could be used to defend the case." *Id*. at 6. Thus, Hayes does not even allege that the video was favorable. And even assuming it was favorable, the jury viewed the video. Hayes has not demonstrated that he was entitled to suppression of the tape. He has not shown that the video was exculpatory, that the State suppressed it, or that he was prejudiced by delay in production of the video. He has not established a *Brady* violation. The state district court therefore did not err in refusing to grant Hayes' request to exclude the tape. Hayes has failed to demonstrate that the Nevada Court of Appeals' decision on federal ground 1 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable

determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Habeas relief on ground 1 is, therefore, denied.

**Ground 2**

Hayes, who is African American, contends that the under inclusion of African American and Hispanic jurors within the venire violated his Fourteenth Amendment right to trial by a fair and impartial jury that represents a fair cross-section of the community (ECF No. 5, pp. 10-20). Out of the 45-person jury venire, three were African American.

Defendants are not entitled to juries of any particular composition. *Taylor v. Louisiana*, 419 U.S. 522, 538 (1975). The fair cross-section requirement applies to the larger venire pool and not to the petit jury. *See id*. A petitioner may demonstrate a violation of the Sixth Amendment right to an impartial jury trial by proving that the jury venire from which the petit jury was selected did not represent a fair cross-section of the community. *Duren v. Missouri*, 439 U.S. 357, 364 (1979). A petitioner establishes a prima facie violation of the fair cross-section requirement by showing "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process." *Id*. However, "a violation of the fair cross-section requirement cannot be premised upon proof of underrepresentation in a single jury. While juries must be drawn from a source fairly representative of the community, the composition of each jury need not mirror that of the community." *United States v. Mitchell*, 502 F.3d 931, 950 (9th Cir. 2007) (quoting *United States v. Miller*, 771 F.2d 1219, 1228 (9th Cir. 1985)).

During jury selection for Hayes' trial, the defense argued to the court that the representation in the jury pool of African Americans and Latinos was not fair and reasonable and that that was the result of systematic exclusion. Exh. 37, pp. 104-108. Defense counsel contended that based on Clark County, Nevada census data, African Americans and Latinos were significantly underrepresented. Counsel argued that using

utility bills and DMV records skewed the jury pools toward white, more affluent residents.

The district court responded:

> Well, I'll -- I had actually organized a meeting in August of this year that your office attended as observers where the jury commissioner explained in detail and did a PowerPoint presentation as to the jury selection process. Not saying that you can agree with her or not, but she did sit down and went in -- . . . -- in detail with the jury selection process and provided the PowerPoint to everyone.
>
> The records right now -- although I know that there was some thought to move to add in voter registration records, the records right now include NV Energy and DMV. I don't find the DMV argument that that is to a higher economic statute -- stature to be persuasive in that identification is something that almost everybody requires in one form or another so there's a lot of incentive to get some sort of identification and the DMV records would encompass both driving records and those who get identification cards.
>
> . . . It's important to note there are 1.6 million names in the system. The Xerox program that selects them at random and sends out the summonses, the big problems (sic) in large part comes from the -- from people not responding to the summonses and why they're not responding and what ethnic group those individuals who are not responding because there is a large, large percentage that we get no response and there was some discussion at the meeting in August of, you know, should we try to be enforcing these and the number was going to be so great and that no one I think felt that that was a reasonable approach.
>
> It's hard to say, again, what those ethic -- ethnic makeup is of those who don't respond, but the long and short of it is, is that I don't see any systematic effort to exclude either African-Americans or Latinos and so absent a systematic -- lack of any systematic failure, I'm -- and I don't feel you presented a prima facie case showing there's a systematic failure and based on my own information relating to it, I'll -- I'll deny it. If you want, I can make the PowerPoint presentation part of the record in this case.

Exh. 37, pp. 110-111.

The Nevada Court of Appeals rejected this claim in a footnote:

> [FN2: Hayes also argues minorities were underrepresented on the jury venire . . . . But, Hayes fails to support these arguments on appeal. . . . Hayes fails to provide facts or argument demonstrating that any underrepresentation in the jury venire was the result of systematic

exclusion. *See Williams v. State*, 121 Nev. 934, 939-40, 125 P.3d 627, 631 (2005) (setting forth the elements of a fair-cross-section violation). ]

Exh. 126, p. 3, n.2.

While the court recognizes the daunting nature of proving systematic exclusion, Hayes simply has not presented any evidence of such exclusion. He has not shown that the Nevada Court of Appeals' decision on federal ground 2 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  Accordingly, the court denies federal habeas relief on ground 2.

**Ground 3**

Hayes alleges that the trial court violated his federal constitutional rights under *Batson v. Kentucky* by denying his challenge of discriminatory practices (ECF No. 5, pp. 22-26). The State used a peremptory challenge to dismiss a Hispanic man; they said that they dismissed the potential juror because he was being prosecuted at that time by the district attorney's office.

Race-based peremptory challenges to excuse prospective jurors violate the Equal Protection Clause of the Fourteenth Amendment. *Batson v. Kentucky*, 476 U.S. 79 (1986). The Supreme Court requires a three-step procedure in reviewing a *Batson* claim: (1) the petitioner must make out a prima facie case "by showing that the totality of the relevant facts gives rise to an inference of discriminatory purpose"; (2) the "burden shifts to the State to explain adequately the racial exclusion by offering permissible race-neutral justifications for the strikes"; and (3) "[i]f a race-neutral explanation is tendered, the trial court must then decide ... whether the opponent of the strike has proved purposeful racial discrimination." *Johnson v. California*, 545 U.S. 162, 168 (2005) (internal quotations and citations omitted). This is because the three-step review process is not intended "to be so onerous that a defendant would have to persuade the judge — on the basis of all the facts, some of which are impossible for the defendant to

know with certainty — that the challenge was more likely than not the product of purposeful discrimination." *Id*. Rather, to satisfy the first step, the defendant must produce "evidence sufficient to permit the trial judge to draw an inference that discrimination has occurred." *Id*. at 170. A defendant may rely on "any other relevant circumstances" to support an inference of discriminatory purpose. *Id*. at 169. The United States Court of Appeals for the Ninth Circuit has held that statistical disparity can raise a prima facie case. *Williams v. Runnels*, 432 F.3d 1102, 1107-10 (9th Cir. 2006) In *Johnson*, the Court emphasized that a defendant need only show "an inference of discriminatory purpose" and could not be required to show that a "challenge was more likely than not the product of purposeful discrimination." 545 U.S. at 170.

More recently, the Supreme Court reiterated the *Johnson* holding:

> But when illegitimate grounds like race are in issue, a prosecutor simply has got to state his reasons as best he can and stand or fall on the plausibility of the reasons he gives. A *Batson* challenge does not call for a mere exercise in thinking up any rational basis. If the stated reason does not hold up, its pretextual significance does not fade because a trial judge, or an appeals court, can imagine a reason that might not have been shown up as false.

*Miller-El v. Dretke*, 545 U.S. 231, 252 (2005). To "rebut an inference of discriminatory purpose based on statistical disparity, the 'other relevant circumstances' must do more than indicate that the record would support race-neutral reasons for the questioned challenges." *Williams*, 432 F.3d at 1108.

The State moved to use a peremptory challenge to dismiss a Hispanic male juror, Mr. Martinez. Exh. 37, pp. 180-186; *see also id*. at 47-48, 114. Defense counsel objected pursuant to *Batson*, arguing that the State moved to dismiss one of only two Hispanic prospective jurors and pointing out that the prosecution did not ask the prospective juror any questions. The court held that the defense had not made out a prima facie case of discriminatory purpose but nonetheless questioned the prosecution as to the basis for seeking to exclude the Hispanic juror. The State explained that Martinez was currently being prosecuted by the Clark County District Attorney's Office.

The State argued that Martinez expressed anger with the system and appeared hostile to the deputy district attorneys prosecuting this case, including through his body language.

The trial court agreed:

> . . . I didn't find that a prima facie basis had been laid. You know, looking at the evidence, the mere fact that somebody is of a ethnic -- non-White ethnic race is not in and of itself sufficient to establish a prima facie case. In this instance there's nothing to suggest with the exclusions that were made and the pattern of exclusions that were made that there was an intent to exclude someone on the basis of their race.
>
> Separately from that based upon even going further in considering it, I find that the State had sufficient reason to exclude Mr. Martinez. He's presently being prosecuted by the Clark County District Attorney's Office. Arguably there's a conflict that exists in that. He would be asked to be finding for and treating fairly people who he feels are injustly (sic) as he stated prosecuting him at this point having incarcerate him. He's angry with the system which again leads to how is that going to turn in terms of his fairness. While he said that he can be fair, the purpose of preemptories is to exclude those individuals that valid basis exist by either side as to their ability ultimately to be fair. In this case Mr. Martinez exhibited sufficient indicia to suggest to the State that there were concerns as to his fairness towards the State. Consequently, I'll deny the *Batson* challenge in this case.

Exh. 37, pp. 185-186.

The Nevada Court of Appeals agreed that the *Batson* challenge was properly rejected:

> We next consider whether the district court reversibly erred by denying Hayes' *Batson* challenge. When a party opposes a peremptory challenge under *Batson*, the party must set forth a prima facie case of discrimination, after which the proponent of the challenge must present a neutral explanation for the challenge. *Ford v. State*, 122 Nev. 398, 403, 132 P.3d 574, 577 (2006). The district court then determines whether the opponent has proved purposeful discrimination. *Id*. We give great deference to the district court's factual findings and will not reverse the court's decision unless it is clearly erroneous. *See Diomampo v. State*, 124 Nev. 414, 422-23, 185 P.3d 1031, 1036-37 (2008); *Kaczmarek v. State*, 120 Nev. 314, 334, 91 P.3d 16, 30 (2004).
>
> Here, the State argued, and the record shows, that the challenged juror was being prosecuted by the district attorney's office and was angry at

11

the justice system. Hayes does not demonstrate this reason was a pretext for discrimination; for example, he does not show that any other juror indicated similar feelings against the State or was in fact similarly-situated.[FN3] *Cf. Diomampo v. State*, 124 Nev. 414, 425-27, 185 P.3d 1031, 1038 (2008) (addressing discriminatory and neutral peremptory challenges, and noting that peremptory challenges "allow parties to remove potential jurors whom they suspect, but cannot prove, may exhibit a particular bias." (internal quotations omitted)). Accordingly, the district court did not abuse its discretion by denying Hayes' *Batson* challenge.

[FN3: We reject Hayes' arguments regarding the prospective juror accused of a DUI. The record shows the State questioned that juror regarding her experience and her feelings, and that the juror unequivocally affirmed her impartiality.]

Exh. 126, pp. 5-6.

The prosecution provided a race-neutral explanation for dismissing Martinez—that their office was currently prosecuting Martinez and that Martinez exhibited hostility toward the prosecutors in this case. Hayes' has failed to demonstrate that the Nevada Court of Appeals' decision regarding his *Batson* claim was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d).  He is not entitled to habeas relief on ground 3.

**Ground 4**

Hayes argues that the State presented insufficient evidence to establish that he possessed the necessary intent when he entered the hotel room to sustain his burglary conviction (ECF No. 5, pp. 28-31). "The Constitution prohibits the criminal conviction of any person except upon proof of guilt beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 309 (1979) (citing *In re Winship*, 397 U.S. 358 (1970)).  On federal habeas corpus review of a judgment of conviction pursuant to § 2254, the petitioner "is entitled to habeas corpus relief if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Id*. at 324.  "[T]he standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law."  *Id*. at 324 n.16.

On habeas review, this court must assume that the trier of fact resolved any evidentiary conflicts in favor of the prosecution and must defer to such resolution.  *Id*. at 326. Generally, the credibility of witnesses is beyond the scope of a review of the sufficiency of the evidence.  *Schlup v. Delo*, 513 U.S. 298, 330 (1995).

The Nevada Court of Appeals concluded that the evidence was sufficient to support the verdict:

> [T]he record belies Hayes' argument regarding the sufficiency of the evidence. Evidence is sufficient to support a verdict if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Higgs v. State*, 126 Nev. 1, 11, 222 P.3d 648, 654 (2010) (quoting *Rose v. State*, 123 Nev. 194, 202, 163 P.3d 408, 414 (2007) (internal quotations omitted)). As relevant in this case, NRS 205.060(1) defines burglary as the entry into any room with the intent to commit larceny. Here, overwhelming evidence, including witness testimony and surveillance video, supported the State's position and provided facts by which the jury could infer intent. *See Sharma v. State*, 118 Nev. 648, 659, 56 P.3d 868, 874 (2002) ("[I]ntent can rarely be proven by direct evidence of a defendant's state of mind, but instead is inferred by the jury from the individualized, external circumstances of the crime. . ."); *Hernandez v. State*, 118 Nev. 513, 531, 50 P.3d 1100, 1112 (2002) (noting circumstantial evidence is enough to support a conviction).
>
> Moreover, on direct examination, Hayes counsel elicited testimony from Hayes that he was a convicted felon for attempted possession of a credit card without the cardholder's consent, and Hayes admitted to committing the misdemeanor crime of soliciting prostitution, in mitigation of the burglary charge. *See* NRS 201.354(3). Thus, here, the jury was free to conclude Hayes was not a credible witness and therefore disbelieve Hayes' testimony as to his intent at the time of this crime. *See Walker v. State*, 91 Nev. 724, 726, 542 P.2d 438, 438-39 (1975) (holding it is the jury's province to assess witness credibility). Accordingly, we conclude the evidence overwhelmingly supports the conviction.

Exh. 126, pp. 3-4.

Hayes testified that he did not enter the hotel room with the intent to take the money, but because he had arranged to meet a prostitute. The jury also saw the surveillance video and heard the testimony of Harrah's security. While not impossible, Hayes' version of events was not particularly credible, especially in light of the surveillance video. Hayes has not shown that no rational trier of fact could have found

proof of guilt beyond a reasonable doubt. He has not demonstrated that the Nevada Court of Appeals' decision on federal ground 4 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Federal habeas relief is denied on ground 4.

**Ground 5**

Hayes contends that the court violated his Fourteenth Amendment rights to due process and a fair trial when it denied his motion for a mistrial after the State asked an improper question in an attempt to bring up bad act evidence (ECF No. 5, pp. 33-39). In reviewing prosecutorial misconduct claims, the narrow issue the federal habeas court may consider is whether there was a violation of due process, not whether there was misconduct under the court's broad exercise of supervisorial power.  *Darden v. Wainwright*, 477 U.S. 168, 181 (1986).  It is "not enough that the prosecutors' remarks were undesirable or even universally condemned[,] [t]he relevant question is whether the prosecutor's comments so 'infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Tan v. Runnels*, 413 F.3d 1101, 1112 (9th Cir. 2005) (quoting *Darden*, 477 U.S. at 181).  The ultimate question before the court is not whether misconduct denied a fair trial, but whether the state court's resolution of the claim was an unreasonable application of clearly established federal law under 28 U.S.C. § 2254(d)(1). *Furman v. Wood*, 190 F.3d 1002, 1006 (9th Cir. 1999).

Ground 5 arises from the prosecution's cross-examination of Hayes:

> Q: So it's your testimony today the ladies and gentlemen the jury that you met two females at the Westgate Hotel –
>
> A: Yes, sir.
>
> Q: -- got invitation for them join at the Harrah's –
>
> A: Yes, sir.

Q: -- walked up to the 17th floor –

A: Yes, sir.

Q: -- and then walked into the ninth floor door to have sex?

A: Yes, sir.

Q: Okay. You ever walked into anybody else's hotel room before?

DEFENSE COUNSEL: Objection. May we approach?

Exh. 38, p. 70.

The prosecution argued to the court:

I think it's relevant to show the -- his intent when entering that room, Your Honor. That's specifically at issue here is whether he's entered other rooms in the past. If he's entered other people's hotel rooms in the past, has he done this before with prostitutes, has he met random females and just gone down to their rooms that were left ajar right there? I think it's relevant to this thing. This is the issue he's put himself on testimony he's subject himself to cross-examination. It's relevant to show is this the first time that he's ever just met a prostitute and opened up a door that was ajar because the prostitute told him hey we're going to have sex on the ninth floor, my door's slightly open?

Id. at 71.

The court disagreed, pointing out that it was not Hayes' defense that he mistakenly entered the hotel room. The court denied a mistrial but sustained the objection to the question. The defense asked the court to give the jury a limiting instruction, which the court declined to do, reasoning:

I'm not going to do anything now I think that's going to highlight it. I am going to add to the jury -- final jury instructions a repeat of my statement that if I sustain an objection they're not to consider that in their deliberations. All right.

Id. at 74.

The Nevada Court of Appeals agreed that the question was "likely improper:"

[W]e address Hayes' argument that the district court was required to grant a mistrial after the prosecutor engaged in misconduct by asking a question that improperly referenced Hayes' other burglary charge. We review the denial of a mistrial for an abuse of discretion. *Domingues v.*

15

*State*, 112 Nev. 683, 695, 917 P.2d 1364, 1373 (1996). In evaluating a claim of prosecutorial misconduct, we employ a two-step analysis. *Valdez v. State*, 124 Nev. 1172, 1188, 196 P.3d 465, 476 (2008). First, we determine whether the prosecutor's conduct was improper. *Id*. Next, we consider whether the improper conduct warrants reversal. *Id*. In so doing here, we are cognizant that a prosecutor's reference to a defendant's criminal history may violate the defendant's right to due process if "the jury could reasonably infer from the facts presented that the accused had engaged in prior criminal activity." *Rice v. State*, 108 Nev. 43, 44, 824 P.2d 281, 281-82 (1992). But, any error that does not "infect[] the trial with unfairness" and is not constitutional error is subject to harmless-error review, and we will not lightly overturn a criminal conviction based solely on a prosecutor's comments. *Valdez*, 124 Nev. at 1189-1190, 196 P.3d 477 (internal quotation marks omitted); *Rosky v. State*, 121 Nev. 184, 198, 111 P.3d 690, 699 (2005); *Runion v. State*, 116 Nev. 1041, 1053, 13 P.3d 52, 60 (2000).

Our review of the record demonstrates that the prosecutor's question was likely improper, as the district court had previously declined the State's requests to admit evidence of Hayes' other pending burglary case. However, in light of the fact that Hayes admitted during direct examination that he was a convicted felon for attempted possession of a credit card without the cardholder's permission, we conclude that in this instance prosecutor's question on cross-examination does not warrant reversal, and the district court did not err by denying Hayes' motion for a mistrial. Critically, Hayes himself gave prejudicial testimony regarding his own bad acts by admitting to the misdemeanor crime of soliciting prostitution. Therefore, the prosecutor's improper question, under these circumstances, does not rise to prejudicial error warranting reversal.[FN4]

Importantly, too, the defense objected immediately to the prosecutor's question, and the district court sustained the objection. *See Hernandez v. State*, 118 Nev. 513, 525, 50 P.3d 1100, 1109 (2002) (concluding that reversal was not warranted where the defendant immediately objected and the district court sustained the objection). Further, the district court properly instructed the jury, both at the beginning and end of trial, that the statements and arguments of the attorneys were not evidence in the case and that the jury was to disregard any question to which the court sustained an objection. We presume the jury followed these instructions. *Summers v. State*, 1221Nev. 1326, 1333, 148 P.3d 778, 783 (2006). Finally, the error is harmless in light of the overwhelming evidence against Hayes.[FN5] *Valdez*, 124 Nev. at 1189, 196 P.3d 477. Accordingly, [we conclude that] Hayes is not entitled to relief . . . .

[FN4: We further note that where the State asked the question in the context of addressing Hayes' intent to meet a prostitute, and the question was generally worded, it is not clear the jury would have inferred from this question that Hayes had burglarized another hotel room.]

16

1
2

[FN5: In light of our disposition, we reject Hayes' arguments regarding cumulative error. *See* NRS 178.598 (harmless error does not warrant reversal); *see also United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("One error is not cumulative error.").]

3

Exh. 126, pp. 6-8.

4

The appeals court concluded that, while the prosecution was trying to get around

5

the trial court's denial of its motion to admit other bad acts (another burglary

6

prosecution), the question did not so infect the trial with unfairness as to make Hayes'

7

conviction a denial of due process. As the court observed, it was not clear what the

8

State was alluding to with that question. Notably, the court held that the error was

9

harmless in light of the overwhelming evidence against Hayes. Hayes has failed to

10

show that the Nevada Court of Appeals' decision on federal ground 5 was contrary to,

11

or involved an unreasonable application of, clearly established U.S. Supreme Court law,

12

or was based on an unreasonable determination of the facts in light of the evidence

13

presented in the state court proceeding.  28 U.S.C. § 2254(d). The court denies federal

14

ground 5.

15

**Ground 7**

16

Hayes argues that his burglary conviction violates the Fifth, Sixth, and Fourteenth

17

Amendments because the court did not allow the jury to consider Hayes' theory of the

18

case (ECF No. 5, pp. 44-47). The trial court declined to give jury instructions on trespass

19

and petty larceny proffered by defense counsel.

20

To warrant federal habeas relief, a challenged instruction cannot be merely

21

"undesirable, erroneous, or even universally condemned," but must instead rise to the

22

level of a constitutional violation. *Cupp v. Naughten*, 414 U.S. 141, 146 (1973). The

23

erroneous instruction must have "so infected the entire trial that the resulting conviction

24

violated due process." *Id*. "Not every ambiguity, inconsistency, or deficiency in a jury

25

instruction rise to the level of a due process violation." *Middleton v. McNeil*, 541 U.S.

26

433, 437 (2004). The challenged instruction must be evaluated in the context of the

27

overall charge to the jury as a component of the entire trial process. *Boyde v. California*,

28

494 U.S. 370, 378 (1990) ("A single instruction to a jury may not be judged in artificial

isolation but must be view in the context of the overall charge."). In reviewing jury

instructions, a court considers whether the instructions as a whole were misleading or

inadequate to guide the jury's deliberation. *United States v. Garcia-Rivera*, 353 F.3d

788, 791 (9th Cir. 2003). An instruction may not be judged in isolation, "but must be

considered in the context of the instructions as a whole and the trial record." *Estelle*,

502 U.S. at 72.

Defense counsel sought instructions on trespass and petty larceny. The State

argued that the defense was not entitled to lesser-related offense instructions and that

under Nevada law such instructions invaded the province of the State's charging

decisions:

> THE STATE: . . . Essentially *Peck v. State* in 2000 overruled all the case law saying that defense is entitled to a lesser related. They are no longer entitled a lesser-related offense. It invades the province of the State, the sole authority to bring charges against an individual to bring them at trial. . . .

> THE COURT: And I don't have any jury instructions for either theft or trespass so with that I'm not going to give it. . . .

> COURT: -- and I don't understand if you had this all planned out on -- at the beginning of trial why these lesser included jury instructions aren't included in this packet. So yes that's part of it, but no, the main frust (sic) is the State's memorandum which I think does accurately state the State can -- can identify what the jury is to consider as to a charge against the Defendant and the jury is either going to find those facts proven beyond a reasonable doubt or not proven beyond a reasonable doubt. If they're not proven beyond a reasonable doubt, he gets acquitted of the whole thing.

Exh. 38, pp. 23-27.

The court gave the jury the following instructions (among others):

> Instruction No. 3: . . . . It is the duty of the jury to apply the rules of law contained in these instructions to the facts of the case and determine whether or not the Defendant is guilty or not guilty of the offense charged.

> Instruction No. 4: Every person who, by day or night, enters any room with the intent to commit larceny therein is guilty of Burglary. Unless the

State proves beyond a reasonable doubt that James Hayes entered a room with the intent to commit larceny, you must find James Hayes not guilty.

Instruction No. 5: Larceny is the stealing, taking and carrying away, leading or driving away of the personal goods or property of another, with the intent to permanently deprive the owner thereof.

Jury Instruction No. 6: It is not necessary that the State prove the Defendant actually committed a larceny inside the room after he entered in order for you to find him guilty of burglary. The essence of the crime of burglary is the entry with criminal intent. Therefore, a burglary was committed if the Defendant entered the room with the intent to commit a larceny regardless of whether that crime occurred.

Jury Instruction No. 7: The intention with which entry was made is a question of fact which may be inferred from the Defendant's conduct and all other circumstances disclosed by the evidence.

Jury Instruction No. 9: To constitute the crime charged, there must exist a union or joint operation of an act forbidden by law and an intent to do the act. The intent with which an act is done is shown by the facts and circumstances surrounding the case. Do not confuse intent with motive. Motive is what prompts a person to act. Intent refers only to the state of mind with which the act is done. . . .

Jury Instruction No. 10: The Defendant is presumed innocent unless and until the contrary is proved. This presumption places upon the State the burden of proving beyond a reasonable doubt every element of the crime charged and that the Defendant is the person who committed the offense. . . . If you have a reasonable doubt as to the guilt of the Defendant, he is entitled to a verdict of not guilty.

Exh. 40, pp. 4-11.

The Nevada Court of Appeals rejected this claim in a footnote:

[FN2: . . . Hayes also argues . . . that the district court erred by failing to give his proposed jury instructions. But, Hayes fails to support these arguments on appeal. . . .Hayes fails to demonstrate that Nevada law required the district court to give his instructions on the lesser-related offenses. *See Peck v. State*, 116 Nev. 840, 845, 7 P.3d 470, 473 (2000) (holding the court is not required to instruct the jury on lesser-related offenses), overruled on other grounds by *Rosas v. State*, 122 Nev. 1258, 147 P.3d 1101 (2006) (addressing lesser included offenses). Accordingly, we decline to consider these arguments. *See Maresca v. State*, 103 Nev. 669, 673, 748 P.2d 3, 6 (1987) (providing that this court need not consider arguments not adequately briefed or cogently argued).]

Exh. 126, p. 3, n.2.

Nothing in the record suggests that the instructions as a whole were misleading or inadequate to guide the jury's deliberation. Hayes has not shown that the court was required to instruct the jury on trespass or petty larceny. He has not demonstrated that the Nevada Court of Appeals' decision on federal ground 7 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, Hayes is not entitled to relief on federal ground 7.

**Ground 6**

Finally, Hayes asserts that cumulative error warrants reversal of his conviction under the Fifth, Sixth, and Fourteenth Amendments (ECF No. 5, pp. 41-42). The cumulative effect of multiple errors can violate due process and warrant habeas relief where the errors have "so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974); *Parle v. Runnels*, 505 F.3d 922, 927 (9th Cir. 2007).

The Nevada Court of Appeals held that no cumulative error occurred:

[FN5: In light of our disposition, we reject Hayes' arguments regarding cumulative error. *See* NRS 178.598 (harmless error does not warrant reversal); *see also United States v. Sager*, 227 F.3d 1138, 1149 (9th Cir. 2000) ("One error is not cumulative error.").]

Exh. 126, pp. 6-8.

As is explained by the disposition of his claims herein, Hayes has not demonstrated error to cumulate. In light of the substantial evidence presented Hayes has not demonstrated that the Nevada Court of Appeals' decision on federal ground 6 was contrary to, or involved an unreasonable application of, clearly established U.S. Supreme Court law, or was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d). Accordingly, relief on ground 6 is denied.

1    The petition, therefore, is denied in its entirety.

2    **V.    Certificate of Appealability**

3    This is a final order adverse to the petitioner.  As such, Rule 11 of the Rules

4    Governing Section 2254 Cases requires this court to issue or deny a certificate of

5    appealability (COA).  Accordingly, the court has *sua sponte* evaluated the claims within

6    the petition for suitability for the issuance of a COA.  *See* 28 U.S.C. § 2253(c); *Turner v.*

7    *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

8    Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner "has

9    made a substantial showing of the denial of a constitutional right."  With respect to

10   claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists

11   would find the district court's assessment of the constitutional claims debatable or

12   wrong."  *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463

13   U.S. 880, 893 & n.4 (1983)).  For procedural rulings, a COA will issue only if reasonable

14   jurists could debate (1) whether the petition states a valid claim of the denial of a

15   constitutional right and (2) whether the court's procedural ruling was correct.  *Id.*

16   Having reviewed its determinations and rulings in adjudicating Hayes' petition, the

17   court finds that none of those rulings meets the *Slack* standard.  The court therefore

18   declines to issue a certificate of appealability for its resolution of either of Hayes' claims.

19   **VI.    Conclusion**

20   **IT IS THEREFORE ORDERED** that the petition (ECF Nos 5, 6) is **DENIED** in its

21   entirety.

22   **IT IS FURTHER ORDERED** that a certificate of appealability is **DENIED**.

23   **IT IS FURTHER ORDERED** that the Clerk of Court enter judgment accordingly and

24   close this case.

25

26   DATED: 1 June 2022.

27   _____
     GLORIA M. NAVARRO

28   UNITED STATES DISTRICT JUDGE

21